SMITH *v.* PERRY, receiver.

No. 9430. MARCH 20, 1933.

*Robert L. Russell,* for plaintiff in error.
*Clifford Pratt* and *Joe Quillian,* contra.

GILBERT, J. The estate of P. R. Smith, consisting of farm lands, was being operated by a receiver appointed by the judge of the superior court of Barrow County. Mrs. Girlie Smith filed an intervention setting up that she held by assignment a promissory note for $2500, together with a deed executed on December 1, 1913, by P. R. Smith to Chickamauga Trust Co., conveying described land as security for the debt; that the debt was long past due when acquired by her; that considerable interest had accrued; that interest for the year 1929 had not been paid, though the receiver had in his hands ample funds for that purpose; that because of the receivership proceedings the intervenor could not sue upon the note without consent of the court; that without an order of court the equity of Smith's estate in the land could not be extinguished; that

she had no desire to embarrass the receiver in administration of the estate, but did wish payment of the interest past due on the loan. She prayed that the receiver be required to pay the interest past due, and, if funds were not available for that purpose, that the court pass an order permitting her to sell the lands under the power conferred in the security deed; and for such other equitable relief as the nature of her claim should authorize.

The receiver filed a petition alleging, on information and belief, that the loan represented by the note and deed held by Mrs. Smith had been paid off with funds of the estate by O. B. Smith, then executor of the estate, but that he had the note and deed transferred to him as an individual, and that he had undertaken to transfer the same to his wife, the intervenor. Mrs. Smith denied those allegations, asserted that she furnished $2687.50 which was paid to the Chickamauga Trust Company; that she procured her husband to handle the transaction; that through mistake the transfer was made to him, instead of to herself as it should have been; that this was done without her knowledge or consent; that upon return of the papers from Chickamauga Trust Company they were placed in a safe-deposit box, and she did not discover the mistake for some time; that immediately upon discovering it she demanded that the papers be transferred to her.

The jury trying the case returned a verdict for the intervenor. A motion by the receiver for a new trial was granted. The intervenor excepted, contending that the verdict was required by the law and the facts, and that no other verdict could legally have been rendered.

The estate of P. R. Smith owed Chickamauga Trust Company a note for $2750, secured by deed. All agree that that sum was paid to Chickamauga Trust Company and the note and deed transferred to O. B. Smith. O. B. Smith was executor of the estate of P. R. Smith. Up to this stage of the transaction there is no issue between the parties. The contest is over whose money was used to pay the note to Chickamauga Trust Company. Perry, receiver of the Smith estate, contends that the note was paid with money of Smith's estate. The assignment of the deed by Chickamauga Trust Co. to O. B. Smith was about February 1, 1924. Evidence was introduced showing that the estate of P. R. Smith had money on deposit in a checking account with Winder National Bank continuously

from March 22, 1922, to June 4, 1924, and that from April 3, 1922, until June 4, 1924, its balance was never less than $13,748.87. There is no dispute as to the fact that this sum of money was on deposit. O. B. Smith swore, on the trial, that he borrowed from Winder National Bank money with which to pay off the debt due to the Chickamauga Trust Co., and that upon such payment the debt was transferred to himself individually. The wife of O. B. Smith, contends that the loan was paid off with her money. She testified: "I had thirty-five hundred dollars which was in the safety-deposit box at the Winder National Bank. I lifted a loan on this Jackson place with that money; that is the place referred to in my intervention." O. B. Smith in his testimony explained that the amount of the debt at the time it was paid off was about $2800; that he borrowed $2600 from the bank, and supplied the balance from his own funds; that the key to the deposit-box was lost at the time; that later he procured the money belonging to Mrs. Smith from the deposit-box and paid the bank.

One thing stands out clearly amongst some uncertainties and confusion. Smith as executor, together with his wife, are adversaries to creditors of P. R. Smith. While the estate of P. R. Smith had ample cash on deposit in a bank with which to pay off the debt due to Chickamauga Trust Company, the executor took a transfer and assignment in his own name, and his wife insists that it was with her funds that the debt was paid. According to the evidence of O. B. Smith and his wife, there was a transaction between them which resulted in a purchase by the wife, through her husband as executor, of the debt due to Chickamauga Trust Company. Under these circumstances, where the rights of creditors are involved, the transaction between the husband and the wife should be closely scrutinized. There is no direct evidence to the effect that the funds of the estate were used to take up the debt which was assigned to O. B. Smith. No witness swore expressly to that fact, but the fact may be proved by circumstances if the circumstances are sufficient. The fact already stated that the estate was in possession of ample funds with which to pay off the debt is a strong circumstance pointing to a conclusion which conflicts with the testimony introduced by O. B. Smith and his wife. It was shown that O. B. Smith used the note and security deed transferred to him more than once as security for borrowing money in his own name. There was conflicting evidence in behalf of Mrs. Smith, as stated above.

The jury were authorized to consider as a significant circumstance the claim that the wife kept the sum of $3500 in cash, not on deposit in Winder National Bank, but in a safety-deposit box. This is not in accordance with the usual manner of transacting such affairs. It is not for this court to say that her evidence is untrue nor, on the contrary, that it is true. The matter of passing upon the credibility of witnesses is for the jury. That transaction occurred in the year 1924, and was much more significant than if it had occurred within the last year or two, during which time a severe financial depression has operated upon the fears of the public in such matters. However, it was not contended by O. B. Smith or Mrs. Smith that her money kept in the deposit box actually went to the Chickamauga Trust Company. Both of them explained that O. B. Smith borrowed from the bank practically all of the money necessary to purchase the debt from the Trust Company, and that later, when she obtained her money from her deposit box, she reimbursed her husband. These facts further emphasize the necessity that the transaction should be closely scrutinized. In granting a first new trial, the court acted within his province in considering these facts. From a fair consideration of the evidence it can not be said that the verdict was demanded. *Cox* v. *Grady*, 132 *Ga.* 368 (64 S. E. 262); *Johnson* v. *Georgia Railroad & Banking Co.*, 102 *Ga.* 577 (27 S. E. 681); *Carr* v. *Carr*, 157 *Ga.* 208 (121 S. E. 227); Civil Code (1910), § 6204.

*Judgment affirmed. All the Justices concur, except Russell, C. J., disqualified.*